# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

**JASON L. SISSEL**,

      *Plaintiff*,

    v.

**RYAN D. MCCARTHY,**

      *Defendant.*

**No. 19-cv-356 (FYP)**

## <u>MEMORANDUM OPINION</u>

Plaintiff Jason L. Sissel is a veteran of the United States Armed Forces; he served in the U.S. Marine Corps from 1994 to 1999, and in the U.S. Army from 1999 until 2005.  Sissel was medically separated with an honorable discharge based on injuries that he sustained in a motor-vehicle accident while deployed in Iraq during Operation Iraqi Freedom.  In reviewing the terms of Sissel's separation, the Department of Defense Physical Disability Board of Review ("PDBR") twice determined that his injuries rendered him unfit for service and assigned him a disability rating of 20%.  This rating falls short of the 30% disability rating needed for a soldier to be eligible for medical retirement.  Sissel argues that the PDBR's finding that he should be assigned a 20% disability rating was arbitrary and capricious, unsupported by substantial evidence, and contrary to law.  He asks the Court to set aside the Secretary of the Army's decision adopting the PDBR's recommendation under 5 U.S.C. § 706(2)(A), and to correct Sissel's military records to reflect a higher disability rating.

Before this Court are the parties' cross motions for summary judgment.  For the reasons stated below, the Court concludes that the Army's decision was not arbitrary or capricious, was supported by substantial evidence, and was not contrary to law.  Accordingly, the Court will

grant Defendant's Motion for Summary Judgment and will deny Plaintiff's Motion for Summary Judgment.

## STATUTORY FRAMEWORK

Under 10 U.S.C. § 1201 *et seq.*, the Department of Defense determines whether a member of the military is medically fit for duty, and if not, whether that member should receive a disability rating and compensation for his medical condition. *See Chatman v. Department of Defense*, 270 F. Supp. 3d 184, 185 (D.D.C. 2017) (citing 10 U.S.C. §§ 1201–22, 1552–59). Active duty service members may retire with pay if they are determined to be "unfit to perform the[ir] duties . . . because of physical disability incurred while entitled to basic pay." 10 U.S.C. § 1201(a). A service member must receive a disability rating of "at least 30 percent under the standard schedule of rating disabilities" to receive disability retirement. *Id.* § 1201(b)(3)(B). If a service member's disability is rated below 30%, he or she "may be separated from the member's armed force, with severance pay," but is not eligible for disability retirement. *Id.* § 1203(a).

The Army uses the Physical Disability Evaluation System ("DES") to evaluate the nature and extent of service members' disabilities. *See* Army Regulation 635-40, ¶ 1-1. At the outset, an Army physician examines the service member to determine whether he or she is qualified to perform his or her duties. *Id.*, ¶ 4-10. If the physician concludes that the member is not medically qualified, the member is referred to the Medical Evaluation Board ("MEB"). *Id.*, ¶ 4-7, 10. The MEB determines if the soldier's "medical condition(s) meet medical retention standards" which are described in Army Regulation 40-501.[1] *Id.*, ¶ 4-7. If the MEB determines

---

[1] Army Regulation 40-501 is a detailed regulation that describes the medical retention standards for varying conditions and body parts. A solider fails to meet medical retention standards when the condition "[s]ignificantly limit[s] or interfere[s] with the Soldier's performance of their duties" or "[r]estrict[s] performance of any of the profile functional activities listed in Section 4 of the DA Form 3349." *See* Army Regulation 40-501, ¶ 3-1; *see also* ECF No. 36-2 (Joint Appendix ("AR")) at 9 (Memorandum from ARBA Medical Advisor, Dr. Holly Kibble) (stating that conditions are judged under the medical retention standard based on the "impact of the condition on the ability of the solider to perform his or her duties.").

that the solider does not meet necessary retention standards, it will refer the solider to the Physical Evaluation Board ("PEB") for a fitness determination.  *See* Army Regulation 635-40, ¶ 4-12(f).

An informal PEB first considers each case.  *Id.*, ¶ 4-22.  The PEB conducts a "more thorough investigation into the nature and permanency of the servicemember's condition," *Fulbright v. McHugh*, 67 F. Supp. 3d 81, 85 (D.D.C. 2014), and determines "fitness for purposes of Soldiers' retention, separation or retirement for disability."  *See* Army Regulation 635-40, ¶ 4-19.  The PEB "conducts a documentary review of the case file" and makes a determination as to "whether any medical conditions individually or collectively cause[] the Soldier to be unfit for continued military Service."  *Id.*, ¶ 4-22.  "A Solider will be considered unfit when the preponderance of evidence establishes that the Soldier, due to disability, is unable to reasonably perform [his or her] duties."  *Id.*, ¶ 5-1.  If the PEB determines that a soldier's conditions render him or her unfit, the PEB applies ratings to the unfitting conditions.  *Id.*, ¶ 4-22.  The PEB uses the Veteran Affairs Schedule for Rating Disabilities ("VASRD")[2] to assign unfitting conditions a percentage rating.  *See* 10 U.S.C. § 1216a(b).

After the informal PEB's decision, a solider may demand a formal hearing.  *See* Army Regulation 635-40, ¶ 4-23.  If the solider concurs with the findings and recommendations of the informal PEB, thereby waiving a formal hearing, the proceedings are subsequently approved on behalf of the Secretary of the Army and are processed for final disposition.  *Id.*, ¶ 4-22(g)(1).  Regardless of whether the solider concurs with the PEB's finding, after the final disposition, a

---

[2]      The VASRD contains a list of codes that correspond to specific disabilities.  Each code is linked to a disability range of ratings and includes instructions for determining which rating applies in a particular case.  *See, e.g.*, 38 C.F.R. §4.71a (the schedule of ratings for musculoskeletal disabilities).

service member may challenge the determination by appealing to the PDBR.[3]  *See* 10 U.S.C.

§ 1554.  The PDBR reviews the PEB's decision, the evidentiary record, and other evidence

submitted by the soldier.  *Id.* § 1554a(c).  The PDBR then submits a recommendation to the

Secretary of the Army concerning whether to modify the disability rating and whether to

recharacterize the soldier's discharge from a separation to a medical retirement.  *Id.* § 1554a(d).

If the PDBR recommends any change, the Secretary of the Army may make the correction.  *Id.*

§ 1554a(e).  If the PDBR does not recommend changing the determination, then the decision is

final.  *Id.*

### BACKGROUND[4]

Sissel served on active duty in the Marine Corps from November 28, 1994, until February

27, 1999.  *See* ECF No. 36-2 (Joint Appendix ("AR")), at 540 (Certificate of Discharge from

Active Duty, October 24, 2005).  Sissel subsequently enlisted in the Army as a Motor Transport

Operator on April 8, 1999.  AR 469 (Certificate of Discharge from Active Duty, October 24,

2005).  He was deployed to Iraq between February and September 2003.  *Id.*  During his

deployment, Sissel was involved in a motor-vehicle accident on June 6, 2003.  AR 394

(Correspondence regarding Mr. Sissel's Motor Vehicle Accident, June 14, 2005).  The accident

caused Sissel to sustain injuries to his back and to his right leg.  *See id.*  Specifically, Sissel was

diagnosed with "severe degenerative disc disease at L5-S1 with radicular symptoms into the leg

as well as severe low back pain."  AR 403 (Dr. Knetsche Evaluation, June 11, 2004).

Within two weeks of the accident, Sissel experienced increasing back pain and right-leg

numbness; he was unable to walk or get out of bed.  *See* AR 49 (Medical Board Summary,

---

[3]     Congress created the PDBR in 2008 to address the disparities in disability ratings issued by the military departments in the DOD and the VA.  *See Adams v. United States*, 117 Fed. Cl. 628, 665–70 (Fed. Cl. 2014).
[4]     Materials in this case were sealed because they concerned medical records.  Any information included in this opinion is hereby unsealed.

March 31, 2005).[5]  Despite undergoing a spinal fusion in December 2003, Sissel still had leg

pain and weakness, as well as significant back pain.  AR 50; AR 59 (Evaluation of Dr. Knetsche,

May 14, 2004).  During an August 12, 2004, neurosurgery examination, Sissel's right-leg

strength showed a weakness of 5-/5 in the right hamstring, which is below normal strength.  AR

444 (Neurosurgery Examination).  During a February 2, 2005, neurosurgery examination, Sissel

reported intermittent right-leg pain, as well as significant back pain; and the examiner concluded

that Sissel was "unable to run or do sit ups," has difficulty "lifting and bending," and that he was

"non-deployable because he can't carry . . . weights."  AR 60 (Medical Evaluation Board

Summary, February 2, 2005).  A March 29, 2005, Commander's Statement notes similar

functional restrictions.  AR 440 (Army Commander's Statement, March 29, 2005) ("It is

doubtful that [Sissel] would be able to complete a forced road march of several miles with field

equipment.").  Notably, the 2005 neurosurgery examination and the Commander's Statement do

not specifically attribute Sissel's inability to perform certain tasks to either his back injury or his

leg injury.  An additional report, a 2005 Physical Profile Restriction, notes Sissel's inability to

perform certain activities due to his back injury.  AR 438 (2005 Physical Profile Restriction)

(specifying "[n]o duties requiring bending, twisting, or stooping").

Sissel went before the MEB on March 31, 2005.  He was evaluated by Dr. Robert C.

Harvey, who found that Sissel had "tenderness to palpation in the lumbar spine associated with

paraspinous muscle spasms, a reduced range of motion in the lumbar thoracic spine, a dense

hypesthesia [numbness] of the lateral aspect of the plantar surface of the right foot and hip

flexion weakness at 5-/5 for the right hip flexor."  AR 455 (MEB Narrative Summary, March 31,

2005).[6]  The MEB diagnosed Sissel with (1) degenerative disc disease of the lumbar spine; and

---

[5]      AR 49–52 contains the Medical Board Summary, dated March 31, 2005.
[6]      AR 454–57 contains the Medical Evaluation Board Narrative Summary, dated March 31, 2005.

(2) mild right-leg weakness.  AR 457.  Dr. Harvey opined that Sissel could not perform the essential tasks of his military duties as a Motor Transport Operator.  *Id.* (stating that "[h]e cannot run; lift more than 30 pounds; stand longer than 20 minutes; or ride in tactical vehicles.").  On April 4, 2005, the MEB found that Sissel's back and leg conditions both "fail[ed] to meet retention standards" before referring him to the PEB for a determination of his fitness for duty.  AR 457, 453 (MEB Proceedings, April 4, 2005).

Prior to the PEB evaluation, Sissel underwent a "Compensation and Pension" examination by the Department of Veterans Affairs ("VA"), in support of his request for disability benefits.  *See* AR 66 (VA Physical Examination, May 16, 2005).[7]  On May 16, 2005, Sissel was evaluated by Dr. Edward B. Freyfogle, who diagnosed Sissel with "chronic back pain status post degenerative disc disease L5-S1 with residual sensory changes of his right lateral lower leg."  AR 71.  On November 21, 2005, the VA rated Sissel as 20% disabled for his back injury (lumbar spine degenerative disc disease under VASRD Code 5242),[8]  AR 79 (VA Rating Decision, November 21, 2005); and 10% disabled for his leg injury (right lower extremity hypesthesia under VASRD Code 8599-8520).[9]  *Id.*

On June 14, 2005, the PEB convened on an informal basis to evaluate Sissel's fitness to serve.  *See generally* AR 365–66, AR 381–82.[10]  The PEB characterized Sissel's condition as "chronic back pain and right leg weakness" and noted that Sissel "can forward flex to 55 degrees with pain."  AR 365.  The PEB further noted that Sissel's "strength in the right leg was 5/5 and there was absent sensation to light touch and pin prick in the lateral aspect of [Sissel's] right

---

[7]     AR 66–75 contains the Veterans Administration Physical Examination, dated May 16, 2005.
[8]     VASRD Code 5242 is for "degenerative disc disease other than intervertebral disc syndrome."  *See* 38 C.F.R. § 4.71a.
[9]     VASRD Code 8599-8520 includes complete, incomplete, severe, moderately severe, moderate, or mild paralysis of the sciatic nerve.  *See* 38 C.F.R. § 4.124a.
[10]    AR 365–66 and 381–82 contain the Physical Evaluation Board Informal Proceedings, dated June 14, 2005.

foot." AR 381.  The PEB concluded that Sissel's medical condition rendered him physically

unfit to perform his military duty.  *See id.*  It rated him 10% disabled under VASRD Code 5241

for both his back and leg injuries, citing "chronic back pain and right-leg weakness post vehicle

accident in Iraq which led to L5/S1 discectomy and fusion."  *Id*.  After initially demanding a

formal PEB hearing, Sissel decided to concur with the informal PEB decision.  *See* AR 385

(Sissel's Concurrence with Informal PEB Proceedings, July 19, 2005).  Sissel was honorably

discharged from the Army on October 24, 2005.  AR 469.

More than nine years later, on December 1, 2014, Sissel applied to the PDBR for an

increase in his disability rating to 30% and for his discharge status be "re-characterized to reflect

permanent disability retirement."  *See* AR 36–37 (Brief in Support of PDBR Application).[11]

Specifically, he asked the PDBR to assign a disability rating of 20% for his back pain, and a

separate disability rating of 10% for his leg pain, for a combined total of 30%.  AR 41 (arguing

that his back condition should be rated at least 20% because he demonstrated forward flexion of

the thoracolumbar spine of greater than 30 degrees but less than 60 degrees); AR 42 (arguing that

his right-leg condition should have been separately rated and given a 10% disability rating

because the right-leg condition was a neurologic abnormality associated with his back condition

that was to be evaluated separately under an appropriate diagnostic code).

The PDBR's scope of review is "limited to those conditions determined by the [PEB] to

be unfitting for continued military service."  AR 27 (PDBR Record of Proceedings, November

17, 2016).[12]  Thus, the PDBR focused on "determining if the PEB's approach of combining

[Sissel's back and leg] conditions under a single rating was justified in lieu of separate ratings

[for each injury]."  AR 27–28.  The PDBR noted that when considering separate ratings, it must

---

[11]     AR 36–42 contains Sissel's Brief in Support of PDBR Application, dated December 31, 2014.
[12]     AR 27–29 contains the PDBR Record of Proceedings, dated November 17, 2016.

determine if each of the "bundled condition[s]" is "reasonably justified as separately unfitting," and that the Board will not assign such separate ratings where "the preponderance of the evidence" indicates that the condition "would not cause the [service] member to . . . be found unfit because of physical disability." *Id*.  The PDBR recognized that the PEB had combined the back pain and right-leg weakness as a single unfitting condition under VASRD Code 5241.  *Id.* The Board also understood that the VA had rated the back pain and right-leg weakness separately.  *See id.*  After reviewing the record, the PDBR determined that a separate disability rating for Sissel's right leg was not justified because the leg condition would not, in itself, render Sissel unfit for duty.  AR 28–29 (stating that after "the Board deliberated if the objective findings of [right-leg pain] in this case would impact the duty performance," it found that "there was no evidence in this case that motor weakness existed to any degree that could be described as functionally impairing.").  The PDBR ultimately recommended an increase in Sissel's disability rating for his combined back and leg conditions to 20%.  AR 29.  One member of the PDBR issued a contrary "minority opinion," voting instead to recommend separate disability ratings of 20% for Sissel's back and 10% for his leg, which would have resulted in a total disability rating of 30%.  AR 30 (PDBR Record of Proceedings, Minority Opinion).[13]

On March 30, 2017, the Deputy Assistant Secretary of the Army ("DASA") Review Board accepted the PDBR's recommendation to modify Sissel's disability to 20% without recharacterizing his separation.  AR 25 (Memorandum from the DASA accepting the PDBR's

---

[13]     The PDBR minority opinion stated that

[T]he listed limitations on the profile could not be separated between the back and leg conditions. The commander's statement additionally listed restrictions from climbing on vehicles which would most likely be attributable to the leg condition rather than the back condition, as well as other profile limitations which could equally apply to the back and leg conditions.

AR 30.

recommendation).  On February 12, 2019, Sissel brought this action challenging the Army's

decision.  *See* ECF No. 3.  On May 10, 2019, the parties jointly requested that the case be

remanded to PDBR for reconsideration of Sissel's disability rating.  *See* ECF No. 8.  The Court

granted the parties' request and remanded the case on May 14, 2019.  *See* ECF No. 9.

On remand, the PDBR unanimously recommended that Sissel be assigned a total

disability rating of 20% for his combined conditions and did not recommend a separate rating for

Sissel's leg injury.  AR 16 (PDBR Proceedings, September 25, 2019).[14]  In the PDBR's "de novo

reconsideration" of Sissel's disability rating, the PDBR noted first that the PEB's decision to

combine Sissel's back and leg injuries under a single disability rating reflected the PEB's

judgment that "the constellation of conditions" rendered him unfit for duty.  AR 14.  The Board

then reaffirmed that it could consider separate disability ratings for each of Sissel's conditions

only if each condition was "reasonably justified as separately unfitting."  *Id.*  Thereafter, the

Board proceeded to review Sissel's medical history, including information from his service

treatment record, PEB evaluation, the MEB narrative summary, the MEB examination, a 2004

neurosurgery examination, a 2005 neurosurgery examination, the 2005 Commander's Statement,

the 2005 Profile Restriction, and the VA examination.  *See* AR 14–16.  Notably, the PDBR

considered and discussed ample evidence related to the condition of Sissel's leg.[15]  After

considering the entire record — including evidence that the leg was at normal strength and that

Sissel walked with a normal gait — the PDBR determined that Sissel's right-leg condition alone

---

[14]     AR 14–16 contains the PDBR Proceedings, dated September 25, 2019.

[15]     *See, e.g.*, AR 14 (considering the MEB narrative summary which stated that Sissel continued to have right
leg numbness), *id.* (discussing the 2004 neurosurgery examination finding that right-leg strength was normal except
for hamstring and gastrocnemius muscle strength which was graded 5/-5), *id.* (the 2005 neurosurgery examination
stating that Sissel had intermittent right-leg pain); AR 15 (the MEB examination where Sissel reported numbness in
the right foot, decreased sensation of the lateral right foot, and hip flexor strength graded at 5/-5), *id.* (considering
the VA examination which noted that Sissel had diminished sensation of the lateral aspect of the right-leg down to
the foot but could still walk on his heels and toes).

would not render him unfit for duty, and that there was no evidence that the right-leg condition would have any impact on his duty performance. *See* AR 15.[16] Thus, the PDBR declined to assign a separate disability rating for Sissel's leg condition. AR 16. The PDBR assigned a rating of 20% for the combined conditions of "back pain and right leg weakness." *Id*.

On October 3, 2019, Dr. Holly Kibble, a medical advisor for the Army Review Boards Agency ("ARBA"), provided an informal review of Sissel's case, before the DASA decided whether to adopt the PDBR's recommendation. *See* AR 9 (Memorandum from ARBA Medical Advisor).[17] Dr. Kibble acknowledged that the VA rated Sissel's back and leg conditions separately, while the PEB bundled the two conditions under a single diagnostic code. *See* AR 10, ¶ 3.[18] She noted that the PEB would be obligated to separately rate the two conditions if it

---

[16]     The PDBR fully explained its reasoning, as follows:

> Panel members first considered if the back and right leg conditions, having been de-coupled from the combined PEB adjudication, remained separately unfitting as established above. The back condition was profiled, but the RLE [right lower extremity] condition was not, and the commander's statement did not specifically identify the back or RLE conditions. However, both the back and RLE conditions were judged by the MEB to fail retention standards. The panel deliberated if the objective findings of the RLE radiculopathy in this case would impact the duty performance of a Motor Transport Operator. The panel opined that the decreased RLE sensation would not be anticipated to have any impact on the CI's duty performance and there was no evidence in the record that it did. The slight weakness of the right hip flexion (5-/5) was noted on the MEB NARSUM [narrative summary] examination, but the neurosurgery examination and pre-separation VA examination (the most proximate examination to separation) showed normal RLE strength and a normal gait. There was no performance based evidence that the RLE condition impaired the CI's duty performance at the time of separation. Panel members concluded the back condition was reasonably considered unfitting at separation, but the preponderance of the evidence showed the RLE condition would not have, on its own, caused the CI to be referred into the DES or to be found unfit.
>
> *     *     *
>
> Panel members agreed that a 20% rating, but no higher, was justified for limitation of flexion (greater than 30 degrees but not greater than 60 degrees) . . . While [Sissel] may have suffered additional pain from the nerve involvement, this is subsumed under the general spine rating criteria, which specifically states "with or without symptoms from pain (whether or not it radiates)." There was no documentation of incapacitating episodes, which would provide for a higher rating under the formula for intervertebral disc syndrome. After due deliberation, considering all the evidence and mindful of VASRD § 4.3 (reasonable doubt), the panel recommends a disability rating of 20% for the back condition, coded 5241.

AR 15–16.
[17]     AR 9–12 contains the Memorandum from ARBA Medical Advisor, Dr. Holly Kibble.
[18]     Dr. Kibble explained that

determined that the right-leg condition "contributed significantly to the finding of unfitness" or if it was an "absolute stand-alone unfitting condition." *Id.* Therefore, she presumed that because PEB bundled the conditions, it did not find the right-leg weakness to be a stand-alone unfitting condition. *Id.*

Dr. Kibble reviewed the relevant evidence and provided three reasons why Sissel's right-leg condition should not be rated separately. First, she noted that Sissel's 2005 Profile Restriction lists only back pain as a reason to restrict Sissel's activities and does not list the right-leg condition. AR 10–11, ¶ 5. Second, Sissel's service treatment records do not support finding the right-leg condition unfitting. *See id.* (noting that the post-surgery medical records do not mention leg pain, and in disability exams, the right-leg shows mild or no functional deviation from normal).[19] Third, Dr. Kibble noted that the Commander's Statement listed several activities that would be affected by both the back and right-leg conditions, including not being able to climb on vehicles. AR 11, ¶ 6. Dr. Kibble opined that the most important restriction for a Motor Transport Operator is not being able to climb on vehicles, but this restriction cannot be unequivocally attributed to or even mostly attributed to a right-leg condition, because climbing involves significant back rotation which could produce back pain. *Id.*

---

[T]he PEB function does not perfectly align with the function of the VA and the MEB. The primary function of the PEB is fitness determination and the foundation of the PEB's decision is performance based. . . . The PEB only rates the conditions it determines are unfitting. Therefore[,] the PEB may not rate all of the conditions that the VA rates.

AR 10, ¶ 4.

[19]     Specifically, Dr. Kibble stated:

[O]bjective findings of the right leg condition show mild or no functional deviation from normal: Motor strength is recorded as normal (5/5) or mildly decreased (5-/5) depending on which exam is cited; deep tendon reflexes are normal; gait is normal as well as toe/heel and tandem walk. Decreased sensation on the lateral aspect of the plantar surface would not be expected to and did not demonstrably contribute to functional impairment.

AR 11, ¶ 5.

Sissel submitted comments in response to Dr. Kibble's advisory opinion on November 1, 2019.  AR 3–6.  On December 9, 2019, the DASA approved the second PDBR recommendation, assigning a 20% disability rating to Sissel's overall condition and declining to assign a separate rating for Sissel's leg.  AR 2 (Memorandum from the DASA).  It is the agency's adoption of the second PDBR recommendation that is now disputed by the parties.

## STANDARD OF REVIEW

### I.    Summary Judgment

When reviewing cross-motions for summary judgment under the APA, courts do not apply the summary judgment standard contained in Federal Rule of Civil Procedure 56.  *See Stewart v. Stackley*, 251 F. Supp. 3d 138, 155 (D.D.C. 2017).  Instead, "the function of the district court is to determine whether or not . . . the evidence in the administrative record permitted the agency to make the decision it did." *Sierra Club v. Mainella*, 459 F. Supp. 2d 76, 89–90 (D.D.C. 2006) (citation omitted).  Summary judgment thus serves as the mechanism for deciding, as a matter of law, whether an agency action is supported by the administrative record and otherwise consistent with the APA standard of review.  *Bloch v. Powell*, 227 F. Supp. 2d 25, 31 (D.D.C. 2002) (citing *Fund for Animals v. Babbitt*, 903 F. Supp. 96, 105 (D.D.C. 1995)).

Accordingly, this Court need not and ought not engage in lengthy fact finding, since "[g]enerally speaking, district courts reviewing agency action under the APA's arbitrary and capricious standard do not resolve factual issues, but operate instead as appellate courts resolving legal questions." *James Madison Ltd. by Hecht v. Ludwig*, 82 F.3d 1085, 1096 (D.C. Cir. 1996). The court's role in an APA action is to "determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did." *Charter*

*Operations of Alaska v. Blank*, 844 F. Supp. 2d 122, 127 (D.D.C. 2012) (quoting *Occidental*

*Eng'g Co. v. INS*, 753 F.2d 766, 769–70 (9th Cir. 1985)).

## II.     Administrative Procedure Act

Under the APA, a reviewing court must "hold unlawful and set aside agency action,

findings, and conclusions" that are "arbitrary, capricious, an abuse of discretion, or otherwise not

in accordance with law." *See* 5 U.S.C. § 706(2)(A). Under this "narrow" standard of review, an

agency is required to "examine the relevant data and articulate a satisfactory explanation for its

action including a 'rational connection between the facts found and the choice made.'" *Motor*

*Vehicle Mfrs. Ass'n of United States, Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43

(1983) (quoting *Burlington Truck Lines v. United States*, 371 U.S. 156, 168 (1962)).

Arbitrary and capricious review is "highly deferential" and "'presumes the agency action

to be valid.'" *Defs. of Wildlife & Ctr. for Biological Diversity v. Jewell*, 815 F.3d 1, 9 (D.C. Cir.

2016) (quoting *Ethyl Corp. v. EPA*, 541 F.2d 1, 34 (D.C. Cir. 1976)). It is not enough, then, that

the court would have come to a different conclusion from the agency. *See State Farm*, 463 U.S.

at 43. The reviewing court "is not to substitute its judgment for that of the agency," *id.*, nor to

"disturb the decision of an agency that has examine[d] the relevant data and articulate[d] . . . a

rational connection between the facts found and the choice made." *Americans for Safe Access v.*

*DEA*, 706 F.3d 438, 449 (D.C. Cir. 2013) (internal quotation marks and citation omitted). A

decision that is not fully explained, moreover, may be upheld "if the agency's path may

reasonably be discerned." *Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.*, 419 U.S.

281, 286 (1974). Particularly when "an agency has acted in an area in which it has 'special

expertise,' the court must be particularly deferential to [the agency's] determinations." *Sara Lee*

*Corp. v. Am. Bakers Ass'n Ret. Plan*, 512 F. Supp. 2d 32, 37 (D.D.C. 2007) (quoting *Bldg. & Constr. Trades Dep't, AFL–CIO v. Brock*, 838 F.2d 1258, 1266 (D.C. Cir. 1988)).

In evaluating agency actions under the "arbitrary and capricious" standard, courts "must consider whether the [agency's] decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Marsh v. Ore. Nat. Res. Council*, 490 U.S. 360, 378 (1989) (citation and internal quotation marks omitted). When an agency "fail[s] to provide a reasoned explanation, or where the record belies the agency's conclusion, [the court] must undo its action." *BellSouth Corp. v. FCC*, 162 F.3d 1215, 1222 (D.C. Cir. 1999).

Moreover, when review of an agency's action is "bound up with a record-based factual conclusion," the reviewing court must determine whether that conclusion "is supported by substantial evidence." *Dickinson v. Zurko*, 527 U.S. 150, 164 (1999) (internal quotation marks omitted); *see also Kappos v. Hyatt*, 566 U.S. 431, 436 (2012) (affirming review of "factual findings under the APA's deferential 'substantial evidence' standard"). "Substantial-evidence review is highly deferential to the agency fact-finder, requiring only 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rossello ex rel. Rossello v. Astrue*, 529 F.3d 1181, 1185 (D.C. Cir. 2008) (quoting *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). An agency decision "may be supported by substantial evidence even though a plausible interpretation of the evidence would support a contrary view." *Morall v. DEA*, 412 F.3d 165, 176 (D.C. Cir. 2005). A decision will be reversed for lack of substantial evidence "'only when the record is so compelling that no reasonable factfinder could fail to find to the contrary. '" *Orion Reserves Ltd. P'ship v. Salazar*, 553 F.3d 697, 704 (D.C. Cir. 2009) (quoting *Highlands Hosp Corp. v. NLRB*, 508 F.3d 28, 31 (D.C. Cir. 2007)).

Notably, "an agency's refusal to consider evidence bearing on the issue before it constitutes arbitrary agency action within the meaning of § 706," as does ignoring "evidence contradicting its position." *Butte County v. Hogan*, 613 F.3d 190, 194 (D.C. Cir. 2010). Consequently, "the substantial evidence test and the arbitrary or capricious test are one and the same." *Ass'n of Data Processing Serv. Orgs., Inc. v. Bd. of Governors of Fed. Reserve Sys.*, 745 F.2d 677, 683 (D.C. Cir. 1984).

### III.    Review of Military Decisions

Decisions of military correction boards receive an "unusually deferential application of the arbitrary and capricious standard" of the APA. *Kreis v. Sec'y of Air Force*, 866 F.2d 1508, 1514 (D.C. Cir. 1989); *see also McDonough v. Stackley*, 245 F. Supp. 3d 1, 4 (D.D.C. 2017). Here, however, the parties disagree about whether the PDBR decision should receive the heightened deference standard, as courts have distinguished between "military judgment requiring military expertise," which requires heightened deference, and the "review of the [agency's] application of a procedural regulation," which only requires standard APA deference. *See Kreis v. Sec'y of Air Force* , 406 F.3d 684, 686 (D.C. Cir. 2005). "[T]he exact level of deference that this Court owes to the [PDBR's] decision has yet to be established in our Circuit." *Hall v. DOD*, No. 19-cv-2354, 2021 WL 1026123, at *5 (D.D.C. Mar. 17, 2021). Only one case in this jurisdiction has addressed the appropriate level of deference for the review of PDBR decisions. *See U-Ahk-Vroman-Sanchez v. DOD*, No. 19-cv-3141, 2021 WL 394811, at *6 (D.D.C. Feb. 4, 2021) (finding that that the statute that governs the PDBR, 10 U.S.C. § 1554a, does not merit heightened deference, because concerns over interference in military affairs are not present). This Court need not determine at this time whether PDBR decisions should receive

a heightened level of deference because applying either standard in the instant case leads to the same outcome.

## ANALYSIS

Sissel argues that the agency's decision should be reversed, and that he is entitled to summary judgment because (1) the PDBR's assignment of a 20% disability rating was not supported by substantial evidence; (2) the PDBR's recommendation was arbitrary and capricious; and (3) the PDBR's findings were not in accordance with the law. *See* ECF No. 37 (Plaintiff's Motion), at 10. In response, Defendant argues that the PDBR's recommendation, which was adopted by the Secretary of the Army, articulated a rational connection between the facts found and the choice made; is supported by substantial evidence in the administrative record; and does not violate the law. *See* ECF No. 40 (Defendant's Motion), at 17.

## I.     The PDBR's Recommendation was Supported by Substantial Evidence.

Sissel first argues that the PDBR's recommendation is unsupported by substantial evidence because (1) it failed to consider contradictory evidence detailing right-leg weakness and functional limitations; (2) the evidence the PDBR did consider weighed against its conclusion; and (3) it failed to account for Sissel's pain when assessing his right-leg condition. *See* Pl. Mot. at 11.

Specifically, Sissel argues that the PDBR's recommendation ignored evidence in every evaluation in his record, including in the most proximate-to-separation VA evaluation, that detailed his right-leg weakness and functional limitations. *See id.* at 12. Sissel contends that every characterization of his condition and capabilities revealed right-leg weakness and functional loss, *id.* at 14, and yet, the PDBR stated that "there was no performance based evidence that the [right-leg condition] impaired [Sissel's] duty performance." AR 15. Sissel

16

submits a table detailing how each evaluation in the record discussed or implicated his right-leg

condition.  *See* Pl. Mot. at 12–14.[20]  According to Sissel, this evidence shows that the PDBR

performed a "cursory and inadequate review of the record," failing to consider the evidence that

contradicted its conclusions.  *Id.* at 14–15.  Sissel further asserts that the evidence the PDBR did

consider weighs against its conclusions.  *Id.* at 16.  Sissel contends that the PDBR improperly

dismissed the 2005 Commander's Statement and the 2005 Profile Restriction, documents that he

believes support his position.  *Id.* at 16–17; *see* AR 15.

Sissel's complaints about the sufficiency of the PDBR's review of the evidence lack

merit.  As an initial matter, the PDBR expressly cited Sissel's treatment and evaluation records,

and discussed the information in many of the records, including the 2004 and 2005 neurosurgery

examinations; the 2005 Commander's Statement; the 2005 Profile Restriction, and the MEB,

PEB, and VA examinations.  *See* AR 14–16.  Although Sissel claims that the PDBR's general

statements that it considered all the records fails to prove that the PDBR in fact considered all the

relevant evidence, the agency is not required to explicitly address every bit of evidence that

Sissel considers favorable to his case.  *See Naimabadi v. Holder*, 597 F.3d 983, 990 (9th Cir.

2010) (stating that an agency is not required to "write an exegesis on every contention")

(citation omitted); *see also Tourus Recs., Inc. v. DEA*, 259 F.3d 731, 737 (D.C. Cir. 2001) ("the

core requirement is that the agency explain why it chose to do what it did.") (citation omitted).

The PDBR's extensive and detailed discussion of the evidence related to Sissel's leg condition

belies Sissel's claim that the Board ignored or failed to weigh evidence regarding the leg injury.

---

[20]     These evaluations include the 2004 Knetsche Evaluation stating that Sissel has restrictions limiting "lifting, running, [and] sitting," AR 63, the 2005 Commander's Statement finding that Sissel has restrictions against climbing on vehicles, stopping, and lifting, AR 440, the 2005 MEB Summary, stating that Sissel has "weakness at 5/-5 in the right hamstring" and that "he cannot run; lift more than 30 pounds, [or] stand longer than 20 minutes," AR 49, and the 2005 PEB Evaluation finding Sissel has "right leg weakness," AR 47.

The relevant inquiry is whether the PDBR's finding that the right-leg condition was not separately unfitting was supported by substantial evidence.  With respect to this finding, the PDBR cited evidence in the record that (1) the strength in Sissel's leg was "normal" except for the strength in his hamstring muscle, which was rated 5-/5, AR 14, 444; (2) even though sensation to light touch was absent in the lateral aspect of Sissel's right foot, his reflexes were normal, AR 14, 444 ; (3) the neurosurgery and VA examinations showed normal strength in the leg, normal reflexes, and a normal gait while walking, AR 15, 71, 444, 455; and (4) the VA examination stated Sissel could walk on his toes and heels, AR 15, 71.  Although Sissel attempts to rely on other evaluations that discussed how Sissel's injuries negatively impacted his performance, those reports did not specifically attribute his functional deficits to the condition of his right leg, and therefore do not necessarily militate in favor of a separate rating for the leg injury.  *See* AR 15 (discussing how the 2005 Commander's Statement does not specifically identify the back or right-leg conditions as affecting duty performance and how the 2005 Profile Restriction only lists the back condition).[21]  Indeed, Dr. Kibble's independent review of the record revealed that Sissel's right-leg condition was "of such mild severity that it did not demonstrably impair function."  AR 11, ¶ 7.  Thus, the PDBR's finding relies on "such relevant

---

[21]     Sissel's contention that the PDBR improperly dismissed the 2005 Commander's Statement, and the 2005 Profile Restriction falls short.  The PDBR found the Commander's Statement "vague" because it did not specifically identify whether it was Sissel's back condition or right-leg condition that was affecting his duty performance.  *See* AR 440 ("It is my judgment that [Sissel] would have considerable difficulties performing some basic soldiering skills due to his profile . . . Current profile restricts routine climbing on vehicles, stooping and lifting.").  Likewise, the PDBR noted that the 2005 Profile Restriction only listed the back condition.  *See* AR 14; *see also* AR 438 (stating that the "medical condition" is "back pain s/p back fusion surgery").  The Court agrees with the PDBR that these pieces of evidence do not support, let alone compel, a finding that Sissel's right-leg condition separately rendered him unfit.  Sissel insists that the Commander's Statement and the Profile Restriction support his position that the right-leg injury is separately unfitting because the types of restricted activities enumerated in those documents — such as climbing, stooping, lifting, bending, twisting, and prolonged standing — necessarily implicate the functioning of his leg.  *See* Pl. Mot. at 17.  Although Sissel's interpretation of the evidence is certainly plausible, the PDBR's contrary view is not unreasonable or unsupported.  *See Morall*, 412 F.3d at 176 (stating that a "plausible alternative interpretation of the evidence" does not preclude an agency finding being supported by substantial evidence).

evidence as a reasonable mind might accept as adequate to support a conclusion" that Sissel's right-leg condition is not separately unfitting.  *Rossello*, 529 F.3d at 1185.  The finding therefore is supported by substantial evidence.[22]

Finally, the parties dispute whether the PDBR adequately took into account the pain that Sissel felt in his leg,[23] and the medication that he took to alleviate that pain.  *Compare* Pl. Mot. at 18–19, ECF No. 39 (Plaintiff's Reply) at 15–18 *with* Def. Mot. at 27.  Under the VASRD regulations, the "examination on which ratings are based" must adequately portray functional loss, which "may be due to . . . pain."  38 C.F.R. § 4.40.  Both the Court of Appeals for Veterans Claims and the Federal Circuit have found that under 38 C.F.R. § 4.40, pain must be considered when assessing a disability.  *See Saunders v. Wilkie*, 886 F.3d 1356, 1365 (Fed. Cir. 2018) ("[P]ain often warrants separate and even additional consideration during the course of a rating a disability.") (citing *Sanchez-Benitez v. West*, 13 Vet. App. 282, 285 (Vet. App. 1999)); *see also White v. Mattis*, No. 18-2867, 2019 WL 6728448, at *5 (D.D.C. Dec. 11, 2019) (finding PDBR's decision unsupported by substantial evidence in part because PDBR failed to consider how plaintiff's pain may have affected PEB evaluation).

Sissel argues that the evaluations that showed normal leg strength and gait occurred when he was on pain medication, and that the PDBR failed to explain whether it considered that fact. *See* Pl. Mot. at 22.  As an initial matter, the Court agrees with Defendant that Sissel waived this argument because he never raised it before the PDBR.  *See Hatmaker v. United States*, 138 Fed. Cl. 471, 482 (Fed. Cl. 2018) (finding that a plaintiff waived his right to bring an argument before

---

[22]     Although Sissel argues that the PDBR failed to consider evaluations that detailed his right-leg weakness, *see* Pl. Mot. at 12–14, the PDBR addressed every event that Sissel recounts in his tabular summary of the evidence. *See generally* AR 14–16, Def. Mot. at 22–26 (providing record citations for the PDBR's consideration of each piece of evidence cited by Sissel).

[23]     Sissel points to evidence, including the 2005 Dr. Knetsche Evaluation, which notes intermittent right-leg pain, AR 60; the MEB evaluation where Sissel explained his pain can be as high as 6/10, AR 50; and the VA evaluation where he complained of knee pain, AR 66.

the court when it was not raised in his PDBR review application); *Metz v. United States*, 466

F.3d 991, 999 (Fed. Cir. 2006) (holding that the failure to assert an argument in either the initial

or reconsideration petition before the Board waived the ability to challenge the Board's decision

on those grounds).  Plaintiff's application for PDBR review does not argue that his use of pain

medication affected his evaluations and that those evaluations therefore should be discounted.

*See* AR 36–43.  Nor did Sissel make this argument when his case was remanded for

reconsideration by the PDBR, or when he filed objections to Dr. Kibble's advisory opinion.  He

thus may not raise the argument for the first time before this Court.

Even assuming, *arguendo*, that the issue is properly before the Court, the record reflects

that the PDBR adequately considered Sissel's leg pain and his use of pain medication.  With

respect to pain medication, the PDBR noted that the MEB stated that Sissel had a decreased

sensation of the right foot and hip flexor when he was not taking any pain medication.  *See* AR

15 (considering the VA examination, which showed normal leg strength when taking pain

medication).  As for the pain itself, the PDBR found that "while [Sissel] may have suffered

additional pain from nerve involvement, this is subsumed under the general spine rating criteria,

which specifically states 'with or without symptoms such as pain.'"  AR 16 (further stating that

"there was no documentation of incapacitating episodes, which would provide for a higher rating

under the formula for intervertebral disc syndrome."); *see also* AR 14 (noting that Sissel reported

intermittent leg pain after a 2005 neurosurgery examination); AR 14–16 (considering the MEB

Summary where Sissel stated he has pain located in the "lower back and right leg" that can

become as bad as 6/10 intensity, and the VA examination where one of Sissel's main complaints

was "bilateral knee pain").[24]  While the PDBR could have been even more explicit in detailing

---

[24]        Sissel argues that 38 C.F.R. § 4.71a cannot be used to subsume his leg pain because it applies to conditions
"with or without symptoms such as pain (whether or not it radiates), stiffness, or aching in *the area of the spine*

its consideration of Sissel's right-leg pain, any oversight may well have been due to Sissel's

failure to bring the issue to the Board's attention; and in any event, Sissel is not entitled to an

exhaustive review. *See Dickson v. Sec'y of Defense*, 68 F.3d 1396, 1404 (D.C. Cir. 1995) ("an

agency's decision" is not required to be "a model of analytic precision to survive a challenge.").

The PDBR, therefore, adequately considered Sissel's leg pain and use of pain medication when

finding that his leg weakness was not separately unfitting.[25]

In sum, the PDBR's determination that Sissel's leg injury was not separately unfitting,

and that he therefore was not entitled to a separate disability rating for it, was supported by

substantial evidence.  Even though Sissel presents a plausible, alternative view of the evidence,

the PDBR's determination is adequately supported and is entitled to deference.  *See Morall*, 412

F.3d at 176 (stating that a "plausible alternative interpretation of the evidence" does not preclude

an agency finding being supported by substantial evidence).  The PDBR decision addresses the

evidence in the record in detail and explains how the agency evaluated and weighed the evidence

---

affected by residuals of injury or disease." 38 C.F.R. § 4.71a (emphasis added); *see* Pl. Reply at 18.  Therefore, Sissel argues, only back pain can be subsumed under the spine rating criteria.  *Id.*  As an initial matter, it appears that Sissel waived this argument by failing to raise it in his application for PDBR review.  *See* AR 36–43.  Sissel also could have brought this point to the PDBR's attention on remand, or in his response to Dr. Kibble's evaluation, but he did not do so.  Sissel's failure to preserve this argument precludes this Court's consideration of it.  The Court notes that Sissel is challenging the PDBR's interpretation of a regulation concerning the rating of a disability, an area in which the PDBR has experience and expertise.  The PDBR interpreted the regulation to allow Sissel's additional pain from nerve involvement — which presumably refers to the pain and numbness in Sissel's leg — to be subsumed under the general rating.  *See* Def. Mot. at 30, AR 16.  This Court is required to give appropriate deference to the agency's interpretation and must decline to sit as a "super correction board," *see Coburn v. McHugh*, 77 F. Supp. 3d 24, 31 (D.D.C. 2014).  This holds particularly true where Sissel's failure to raise this argument before the PDBR deprived the agency of an opportunity to consider his position.

[25]      Plaintiff invokes *White v. Mattis*, No. 18-cv-2867, 2019 WL 6728448 (D.D.C. Dec. 11, 2019), in arguing that the PDBR's decision was not supported by substantial evidence.  *See* Pl. Mot. at 11–19.  In *White*, the PDBR's decision was reversed because it "failed to mention, let alone consider, [functional limitations] in its analysis."  *See White*, 2019 WL 6728448, at *6.  The court in *White* further found that the PDBR considered evidence that appeared to undercut its ultimate conclusion and failed to account for pain medications.  *See id.*  The facts in *White* are distinguishable from those in the case at bar.  First, as discussed, *supra*, the PDBR considered all the evidence in the record, including the allegedly contradictory evidence.  Second, as discussed, *supra*, the PDBR did account for Sissel's pain medication and pain in evaluating his examinations, and Sissel waived any argument that the PDBR's consideration should have been more detailed or explicit because he failed to request such consideration before the Board.  Therefore, Plaintiff's reliance on *White* is unavailing.

when reaching its conclusion.  *See generally* AR 14–16.  Because the Court may not substitute

its judgment for that of the agency, *see State Farm*, 463 U.S. at 43, Defendant is entitled to

summary judgment on this issue.

**II.     The PDBR's Recommendation Was Not Arbitrary and Capricious**

Sissel also argues that the PDBR's disability determination was arbitrary and capricious

because the Board failed to adequately explain (1) "why it decided to attribute [Sissel's] inability

to perform physical activities implicating his right leg use solely to his back condition;" and (2)

"why [Sissel's] right leg pain and hypesthesia would not impair his performance."  *See* Pl. Mot.

at 20.  Sissel contends that the PDBR analyzed whether his right-leg condition was separately

unfitting in a single paragraph, making its explanation too cursory to pass muster.  *Id.* at 20–21.

While Sissel may have preferred a more thorough explanation of the PDBR's decision, "nothing

more than a brief statement is necessary," stating "why [the agency] chose to do what it did."

*Tourus Recs., Inc.*, 259 F.3d at 737 (internal quotation and citation omitted); *see also Bowman

Transp., Inc.*, 419 U.S. at 286 (a decision that is not fully explained may be upheld "if the

agency's path may be reasonably discerned.").

The PDBR's ultimate rating of Sissel's disability was based on both "back pain and right

leg weakness," *see* AR 16, but the PDBR also stated that Sissel's functional limitations are

attributable to his back condition.  That statement was based on evidence and was not arbitrary

and capricious.  The PDBR examined the record and found that the right-leg condition "would

not have, on its own, caused [Sissel] to be . . . found unfit."  AR 15.  In coming to this

conclusion, the PDBR noted the lack of evidence that Sissel's unfitness was caused by his leg

injury.  *See id.*  The 2005 Commander's Statement was "vague and did not specifically identify

the back or [right-leg] conditions as affecting duty performance."  AR 15.  Moreover, the 2005

Profile Restriction only "listed the back condition" and not the leg condition. *Id*. The PDBR's conclusion is validated by Dr. Kibble, who also determined that Sissel's functional limitations "cannot be unequivocally endorsed to be solely or even mostly attributable to the right leg condition." AR 11, ¶ 6.

The PDBR also found that Sissel's right-leg condition did not impair his performance, relying on the MEB's summary, which noted only a slight weakness of the right hip flexion. *See* AR 15. Further, the PDBR cited the neurosurgery exams and the VA exams that showed normal right-leg strength and a normal gait. *Id*. Dr. Kibble concurred with the PDBR's assessment, noting in her review that Sissel's right-leg condition showed mild or no functional deviation from normal. *See* AR 11; *see also id* (reasoning that right-leg condition would not impact his ability to climb on vehicles because it was mild or indistinguishable from normal). The PDBR's finding in this regard was reasonable and explicitly connected to the record evidence. *See* AR 15 (opining that "the decreased [right-leg] sensation would not be anticipated to have any impact on [Sissel's] duty performance and there was no evidence in the record that it did.").

In sum, the PDBR sufficiently articulated a "rational connection between the facts found and the choice made." *Burlington Truck*, 371 U.S. at 168. The PDBR connected the evidence in the record to its finding that Sissel's unfitness is attributable to his back injury, as well as to its finding that Sissel's right-leg condition does not impair his duty performance. *See generally* AR 14–16. Thus, the PDBR's determinations were not arbitrary or capricious.

### III.    The PDBR's Recommendation Is Not Contrary to Law.

Finally, Sissel challenges the PDBR's recommendation as contrary to the law, arguing that: (1) the PDBR had no authority to deem a condition fitting that the PEB deemed unfitting; (2) the PDBR failed to give special consideration to Sissel's VA disability rating; and (3) the

PDBR failed to give Sissel the benefit of the doubt when evaluating his limitations.  *See* Pl. Mot. at 22–23.  The Court addresses these arguments in turn.

> A.   The PDBR did not illegally contradict the PEB's finding.

Sissel contends that the PDBR improperly decided that his leg condition legally was "fitting" when the PEB concluded it was "unfitting."  *See* Pl. Mot. at 23.  Sissel insists that the PDBR does not have authority to make such a contrary finding.  *Id.* at 25.  Defendant responds the PDBR did not reverse any finding by the PEB that Sissel's leg injury, in and of itself, rendered Sissel unfit.  *See* Def. Mot. at 29.  Rather, Defendant argues, the PDBR agreed with the PEB's decision that the combined conditions rendered Sissel unfit under a single diagnostic code.  *Id.*

Defendant does not dispute that the PDBR may not recommend the reduction of a disability rating previously assigned by the PEB.  *See* Department of Defense Instruction ("DoDI") 6040.44, Enclosure 3, ¶ f (providing that a PDBR recommendation to modify a combined disability rating "may not be a reduction of the disability rating previously assigned such covered individual by the PEB").  Indeed, it is important to emphasize that the PDBR ultimately recommended a higher disability rating of 20%, as compared to the PEB assignment of a 10% rating.  *See* AR 16, 29.  The Army argues that it agreed with the PEB's determination that the right-leg condition was not independently unfitting.  *See* Def. Mot. at 28–29.  The PDBR noted in its report that the PEB had combined Sissel's leg and back conditions and had found that the "constellation of conditions" rendered Sissel unfit for duty.  AR 14.  Moreover, Dr. Kibble interpreted the PEB's combined rating to indicate that the PEB found the leg, by itself, not unfitting.  *See* AR 11, ¶ 7.  She reasoned that because the PEB was obligated to give the leg condition a separate rating if it found that the condition significantly contributed to unfitness or

was stand-alone unfitting, the PEB's failure to give a separate rating indicated that the PEB found leg injury was not unfitting.  *See* AR 10, ¶ 3.  Thus, the record simply does not support Sissel's contention that the PEB found his leg injury independently unfitting.[26]

The Court agrees with Defendant that the PDBR's recommendation complied with the law and was consistent with the PEB's recommendation.  The Army can only consider unfitting conditions in rating the degree of incapacity for retirement, or separation for disability.  *See* 10 U.S.C. § 1216a(b).  Thus, because the PEB and the PDBR both found that Sissel's leg condition was not separately unfitting, they did not have the authority to separately rate it.  *See also* AR 10, ¶ 3 (Dr. Kibble presumed that the PEB bundled the two conditions together because it did not find that the right-leg weakness was a stand-alone unfitting condition).  The PEB specifically rated both the back and leg conditions under a single diagnostic code and did not rate the leg condition as separately unfitting.  *See* AR 47.  The PDBR then made a finding that was consistent with the PEB's determination — it also found that the right-leg by itself was not unfitting.  *See* AR 16.  The PDBR, like the PEB, determined that the disability rating should reflect both the back and the leg conditions.  *Id.* (identifying the unfitting conditions together as

---

[26]       Sissel relies on *McCord v. United States*, a case where the Court of Federal Claims found a decision by the Army Board for Correction of Military Records ("ABCMR") arbitrary and capricious where the ABCMR declined to increase the plaintiff's disability rating under circumstances similar to those presented by the case at bar.  *See* 131 Fed. Cl. 333 (Fed. Cl. 2017).  Sissel contends that the facts of *McCord* are identical to the facts of his case, and thus, the PDBR also erred in not increasing his disability rating.  *See* Pl. Mot. at 25.  This Court, however, does not find *McCord* convincing.  First, the court in *McCord* held that the ABCMR decision was not supported by substantial evidence, *see McCord*, 131 Fed. Cl. at 347–49, while Sissel invokes *McCord* to support his argument that the PDBR's decision was not in accordance with the law.  Second, the court in *McCord* found that the VASRD Code that the PEB used was inappropriate because while the PEB cited McCord's leg condition as contributing to his unfitness, the assigned rating of 5242 only related to McCord's spine injury.  *See McCord*, 131 Fed. Cl. at 347–48.  In contrast, the PEB here specifically accounted for Sissel's leg pain, *see* AR 47, and the PDBR concluded that the rating that the PEB assigned to Sissel's conditions, VASRD Code 5241, encompassed both his back condition and any additional leg pain — because the leg pain was subsumed under the general spine rating criteria.  *See* AR 16 (citing 38 C.F.R. § 4.71a), *see supra* n.24.  Thus, in Sissel's case, the VASRD code accounted for his leg injury, and the final rating assigned by the PDBR did not omit consideration of the leg condition — the rating expressly was based on "back pain and right leg weakness."  *See* AR 16.

"back pain and right leg weakness").[27]  The Court therefore discerns no illegality in the PDBR's

findings and recommendation.  *See* DoDI, 6040.44, Enclosure 3, ¶¶ (f)–(g).

       B.      <u>The PDBR gave appropriate consideration to the VA ratings.</u>

Sissel argues that the PDBR decision was contrary to law because it failed to give

"particular consideration" to the VA disability determination, which separately rated his right-leg

condition.  Sissel also complains that the PDBR did not provide an explanation for why it

deviated from the VA rating.  *See* Pl. Mot. at 26–27.

Sissel is correct that the PDBR is required to consider the VA's disability rating.

According to a DoD regulation, the

> PDBR should compare any [VA] disability rating for the specifically military
> unfitting condition(s) with the PEB combined disability rating and consider any
> variance in its deliberations and any impact on the final PEB combined disability
> rating, particularly if the [VA] rating was awarded within 12 months of the Service
> member's separation.

*Hatmaker v. United States*, 117 Fed. Cl. 560, 569 (Fed. Cl. 2014) (quoting DoDI 6040.44,

Enclosure 3 ¶ 5(a)(4)); *see also* DoDI 6040.44, Enclosure 3, ¶ 4(a)(5)(b).  Sissel asserts that

because the VA evaluation that separately rated his right-leg condition was only five months

prior to his separation, it was entitled to "particular" consideration.  *See* Pl. Mot. at 26.

The record reflects that the PDBR appropriately considered the VA disability rating.  In

evaluating the record evidence, the PDBR expressly stated: "At the 16 May 2005 VA

Compensation and Pension (C&P) examination, 5 months before separation, the CI reported he

could easily walk 2 miles for exercise, but could not run or perform other vigorous physical

---

[27]      The Court recognizes that the PDBR's statements that Sissel's leg injury did not impair his fitness for duty, *see* AR 15, appear to contradict the PEB's finding that Sissel's unfitness was attributable to a combination of the back and leg conditions, *see* AR 47.  But the PDBR's ultimate rating was based on both "back pain and right leg weakness" and was twice as high as the rating assigned by the PEB for the same combined conditions — *i.e.,* the PDBR assigned a rating of 20%, while the PEB assigned a rating of only 10%.  *See* AR 16; *see also* AR 47.  Thus, the PDBR did not find a condition "fitting" that the PEB found "unfitting," and the PDBR did not assign a lower rating to the combined conditions than the PEB did.

activity without immediate distress." AR 15.[28]  Although the PDBR did not conform its

disability rating to those of the VA, the PDBR was not required to do so.  As Dr. Kibble

explained, "the PEB function does not perfectly align with the function of the VA," and the PEB

"may not rate all of the conditions that the VA rates."  AR 10, ¶ 4.  This is because the VA

conducted a "Compensation and Pension" examination to determine Sissel's disability benefits,

whereas the PEB focused solely on Sissel's fitness for duty and could only rate conditions that

are unfitting.  The record thus reflects that the PDBR noted and compared the VA disability

rating with the PEB rating, as required.  Moreover, the PDBR's failure to adopt the same ratings

as the VA does not render the PDBR's decision unlawful.

  C. <u>The PDBR was not required to give Sissel the benefit of the doubt.</u>

  Lastly, Sissel argues that the PDBR decision was contrary to law because it failed to

resolve evidentiary ambiguities in his favor.  *See* Pl. Mot. at 28.  Sissel notes that many of the

restrictions on his activities described in the Commander's Statement and in the 2005 Profile

Restriction could have been equally or substantially attributed to the right-leg condition; he

argues that the PDBR was obligated to resolve any ambiguity on this point in his favor.  *See* Pl.

Mot. at 28–29.

---

[28] The PDBR goes on to detail the VA examination, noting that

  Physical examination showed normal gait, posture and spinal contour without tenderness or muscle spasm.  Reflexes were normal and symmetric, strength was normal (5/5) with strong dorsiflexion of the foot and great toe.  Although there was diminished sensation of the lateral aspect of the RLE down to the foot and the fourth and fifth toes, the CI would walk on his toes and heels.  Back ROM testing showed forward flexion of 50 degrees and combined ROM of 155 degrees, after repetition, with painful motion.  Straight leg raise testing to elicit lower extremity radicular symptoms was negative bilaterally.  The examiner noted that during a flare-up or with repetitive motion there was no additional effect on ROM or joint function due to pain, weakness or incoordination.

AR 15.

Sissel is correct that the PDBR was required to resolve any reasonable doubt in his favor. *See* 38 U.S.C. § 5107(b) ("When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter."); *see also* 38 C.F.R. § 3.102 ("When, after careful consideration . . . a reasonable doubt arises . . . the degree of disability, or any other point . . . will be resolved in favor of the claimant.").  Here, however, the Court agrees with Defendant that there were no evidentiary contradictions to resolve.  *See* Def. Mot. at 31.  As Defendant notes, the 2004 neurosurgery exam showed right lower extremity strength was normal; the MEB evaluation similarly showed hip flexor strength measured at 5-/5; and the VA examination showed normal reflexes and normal strength in Sissel's leg.  *Id.*; *see also* AR 444, 456, 66.  That evidence was not inconsistent with the Commander's Statement and the Profile Restriction because the latter two documents did not specifically consider whether Sissel's leg weakness — independent of his back injury — affected his duty performance.  *See* AR 440, 438.  Because the Commander's Statement and Profile Restriction shed no light on the relative effect of Sissel's leg injury on his fitness, the PDBR reasonably placed greater weight on the medical exams.  *See* Def. Mot. at 33, AR 15.  The PDBR considered the Commander's Statement and Profile Restriction but characterized those documents as "vague" because they did not separately evaluate Sissel's leg condition.  AR 15; *see also* AR 440, 438, *supra*, Section II. The cited evidence was not ambiguous and did not present a dispute that should have been resolved in favor of Sissel.[29]

---

[29]       Plaintiff once again invokes *White v. Mattis* to support his argument that the PDBR failed to give him the benefit of the doubt.  *See* Pl. Mot. at 28.  In *White*, the court found the PDBR decision arbitrary and capricious because there was no evidence about whether the PDBR resolved evidentiary imbalances in plaintiff's favor.  *See White*, 2019 WL 6728448, at *6.  The Court finds *White* distinguishable because here, unlike in *White*, there were no contradictions in the evidence to resolve.

**CONCLUSION**

Although Sissel's challenges to the PDBR's findings and recommendation are largely framed as procedural arguments under the APA, his claims actually reflect his understandable dissatisfaction with the substantive outcome of the Army's review of his case.  Notably, the record reflects that Sissel was afforded ample procedural protections that went beyond the normal administrative process of review:  The PDBR reviewed his case not once, but twice, and the Army agreed to a remand from this Court in order for the second review to occur.  Moreover, after the second review, Sissel received the benefit of an independent assessment of his case by Dr. Kibble; and he was given an opportunity to submit a response to her report before the DASA decided whether to adopt the PDBR's recommendation.  Although the outcome of this process was not the one that Sissel desired, the Court's careful review of the record reveals that there were no procedural defects under the APA.  The Court also concludes that the Army's decision complied with the law.  The Court therefore will grant Defendant's Motion for Summary Judgment and will deny Plaintiff's Motion for Summary Judgment.  A separate Order will issue this day.

_____
Florence Y. Pan
United States District Judge

Date: December 22, 2021